**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 24-CR-85 (JDB)** |
| **NARCISO HARDIN,** | |
| **Defendant.** | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT**
**OF PRETRIAL DETENTION**

Defendant Narciso Hardin should be detained pending trial under 18 U.S.C. § 3142(f)(1)(A) (crime of violence). A grand jury returned an indictment charging the defendant with one count of distribution of child pornography, after the defendant sent an undercover officer dozens of images and videos of the sexual abuse of children over an internet-based messaging application. He did so while trying to arrange a livestream of the sexual abuse of the undercover officer's (fictional) minor daughter—something the defendant indicated he was willing to pay for. Preliminary analysis of the defendant's other conversations on the messaging app show he was routinely receiving and distributing child pornography, repeatedly expressing his desire to engage in the sexual abuse of children, and sending messages that went so far as to discuss killing children. In a message to another messaging app user on January 21, 2024, the defendant summed up the risk he poses if not detained: "Oh my god I want to hurt a child for real so bad lol."

A presumption of detention applies here, and no condition or combination of conditions will keep the community safe. The defendant should be detained pending trial.

## PROCEDURAL HISTORY

The defendant was arrested on a federal complaint and arrest warrant on January 31, 2024, in the Southern District of Indiana.  He had his initial appearance there on February 1, 2024.  The defendant waived his right to a detention hearing in the Southern District of Indiana but reserved the right to a detention hearing in the District of Columbia.  On February 15, 2024, a grand jury returned an indictment against the defendant for a single count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2).  He had his initial appearance in the District of Columbia on February 21, 2024.  At that hearing, the Government moved for the defendant's detention pending trial.  A detention hearing is set for February 26, 2024.

## BACKGROUND

### A.  The Undercover Chats

On Tuesday, January 16, 2024, an FBI Washington Field Office Task Force Officer was acting in an undercover capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation Child Exploitation Task Force, operating out of a satellite office in Washington, D.C.[1]  In that capacity, the undercover was within a private Kik[2] group, which the undercover has been a member of for several months. This Kik group is known to the undercover as a place where people meet, discuss and trade original images and videos depicting children engaged in sexual acts.

On Tuesday, January 16, 2024, at approximately 2:44 a.m. EST,[3] a Kik user with screenname, "jamiegirl15yo" entered the Kik group and posted a message asking members of the

---

[1] The undercover was in Washington, D.C. during all communications described below.

[2] Kik is an instant messaging mobile application where one can transmit and receive messages, photos, and videos. Users can communicate privately with other users or in groups.

[3] Eastern Standard Time (EST) is used as the default time zone within this document.

group to join his/her Kik group by stating, "Go join anythingnolims go join for a new group and soon to be fun experiences." The undercover joined that Kik group – "anythingnolims" – and monitored the messages and images/videos that were being shared within the group. While monitoring the group, the undercover observed a Kik member using the screen name, "1ndianaman46." The Kik user "1ndianaman46" was subsequently identified as the defendant, Narciso Hardin. Within the group, the defendant posted over ten videos depicting adult men and women sexually abusing prepubescent children. The following are descriptions of several videos the defendant distributed within the Kik group:

  a. A video (approximately one minute and forty-seven seconds in length) depicting two preteen boys fully nude, in bed with a fully nude adult female. The adult is on her hands and knees, and one of the preteen boys presses his penis on the woman's exposed vagina. The other preteen boy is touching the bare breast of the adult female.

  b. A video (approximately twenty-seven seconds in length) depicting an adult female using her mouth to suck the penis of a toddler-aged boy.

  c. A video (approximately thirty-one seconds in length) depicting an adult female using her hand to manipulate the penis of a toddler-aged boy and then using her tongue to lick the toddler's anus.

After the defendant sent the videos within the Kik group, the undercover initiated a private Kik chat conversation with him. During the private conversation between the undercover and the defendant, the undercover purported to be the father of an 8-year-old girl. During the chat, the defendant stated that he resided in Indiana and was the father of a 23-year-old daughter. The defendant informed the undercover that he had sexual contact with his daughter when she was between one and thirteen years old. Within their private conversation, the defendant directly sent the undercover the three videos described above, along with additional videos and images depicting adults sexually abusing children.

The following is a portion of the private conversation between the defendant and the

undercover on January 16, 2024:

| | |
|---|---|
| Defendant: | I just sent you all the pedo moms I got. |
| Defendant: | They are loading |
| Undercover: | mmmm fuck yeah |
| Undercover: | Love to join in with those moms |
| Defendant: | We could double team your little girl |
| Defendant: | Drug her and fuck her while she is passed out. |

During the conversation, the undercover provided his cellular number to the defendant and informed him that he could show the purported 8-year-old girl over FaceTime the following week. The defendant provided his cell phone number to the undercover and then began communicating with the undercover via text messenger.

During the text message communication between the defendant and the undercover, the undercover provided an image of his purported 8-year-old daughter.[4] The defendant responded, "oh fuck have you cum on that beautiful little face yet." The undercover asked the defendant, "What do u wanna see me do with my daughter when she here?" The defendant responded, "Eat her little pussy and finger both of her holes and cum on her face." Later in the text conversation, the defendant requested that the undercover spit and ejaculate on his purported 8-year-old daughter's face during the future FaceTime session.

Within the text message communication, the defendant informed the undercover that his wife died from breast cancer and that he currently lived alone in Indiana. During the conversation, the defendant stated that he collected his "CP" [child pornography] from various Kik groups and claimed to have saved fifty or sixty videos and images depicting child sexual abuse material.

---

[4] No real children were used or depicted through the law enforcement investigation.

During the text conversation, the undercover discussed a pair of his purported daughter's panties. The defendant stated, "You can totally mail me some lol." The defendant further stated that he lives alone and provided his address to the undercover.  The defendant sent a video of himself masturbating (no face was visible in the video), an image of his penis (no face was visible in the image), and an image of himself standing nude (the defendant's face was visible). On the image of the defendant standing fully nude, a unique tattoo is visible on his left forearm.

Later in the text conversation, the defendant informed the undercover that he resided with his brother, his brother's wife, and his adult nephew. The defendant informed the undercover that his brother's wife is confined to a wheelchair.

On January 22, 2024, Hardin sent the undercover an additional thirteen videos and images depicting children engaged in sexual acts. The following is a sample of those videos/images:

    a.  An image depicting a nude female toddler lying on her back spreading her legs exposing her anus and vagina to the camera.

    b.  A video (approximately thirty-three seconds in length) depicting an adult male using his penis to penetrate a prepubescent girl's mouth.

    c.  A video (approximately one minute eight seconds in length) of an adult male pressing his penis into a prepubescent girl's anus.

Law enforcement used available commercial and law enforcement sensitive databases to identify the user of Kik account "1ndianaman46" as the defendant. The Facebook profile for Narciso Hardin contained a profile picture visually similar to the photos sent by the suspect to the undercover, including a unique tattoo on the suspect's forearm.  Payment information for the phone number provided to the undercover also linked to the defendant.

**B.  Defendant's Admissions to the FBI**

On January 31, 2024, the FBI arrested the defendant and executed a search warrant at his residence.  After waiving his *Miranda* rights, the defendant agreed to speak with law enforcement.

In pertinent part, the defendant admitted using the Kik messaging application and communicating in a chat group called "no limits." He stated that his username was the same account that had exchanged messages with the undercover, and he said that he had been using that username for at least a few months. He also admitted to distributing child sexual abuse material on Kik on multiple occasions but could not recall the specific usernames of anyone. The defendant stated that he received and distributed images and videos of minor boys and girls from ages three or four up to fifteen. He estimated that he had distributed and received child pornography on approximately twenty to thirty occasions. The defendant stated that he would receive images or videos on the Kik app and would later distribute or trade those images and videos to receive additional images or videos of child pornography.

### C.  Additional Messages on the Defendant's Kik Account

The FBI also obtained a search warrant for the defendant's Kik Messenger account. Through a preliminary analysis of records from Kik, the FBI determined that there were approximately 7,118 messages sent or received from the defendant's 1ndianaman46 account. These messages show this defendant repeatedly sending and receiving images of child pornography. The defendant also repeatedly expressed his desire to abuse—and even murder— children.

For example, he messaged a user on January 15, 2024: "Oh man I wish it was possible to actually fuck a baby." The next day, he told a different user: "Oh my god Id love to fuck a toddler." Three days after that, on January 19, 2024, he messaged a different user several graphic depictions of the violence he wanted to commit against children:

- "Would love to kidnap and enslave a little girl. Rape her and beat her every day keep her chained up in my basement"

- "Make them watch as I tear their newborns asshole open with my big cock"

- "What would you do if we accidentally killed one"

- "What would you do if I killed one on purpose"

Two days after that, the defendant again sent a series of violent messages to a different user:

- "Oh I love being a perv I want to tie your brother and your dad up and make them watch me rape both you and your mother"

- "Cum in both of you and knock you both up. Make you give me little babies to fuck. And then you hold them down while I rape their newborn asshole"

Finally, on January 21, 2024, he made clear to a different user in no uncertain terms that he wanted to hurt kids: "Oh my god I want to hurt a child for real so bad lol."

## CRIMINAL HISTORY

The defendant was arrested in December 2005 for indecent exposure in Louisville, Kentucky.  The next month, in January 2006, he was arrested again for indecent exposure and second-degree stalking.  The defendant was convicted in the 2005 case of indecent exposure, and the 2006 case was dismissed.  The defendant was initially given probation in the 2005 case.  A probation violation in February 2007 resulted in a two-year extension of his probated sentence. He again had a probation violation in August 2007, resulting in a 180-day jail sentence.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). The Act provides that for certain crimes, there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community. *See id.* "For purposes of making that determination, a grand jury indictment, by itself, establishes probable

cause to believe that a defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

Distribution of Child Pornography under 18 U.S.C. § 2252(a)(2) is a crime of violence involving a minor victim. A rebuttable presumption therefore exists that the defendant constitutes a danger to the community and no condition or combination of conditions will assure the safety of any other person or the community. 18 U.S.C. § 3142(e)(3)(E). This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released").

In determining whether the defendant has rebutted that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the

presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); s*ee also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

A review of the 3142(g) factors makes clear that no condition or combinations of conditions will assure the safety of the community if released.

### A.    The Nature and Circumstances of the Offense Charged

The defendant sent numerous images and videos of child sexual abuse to an undercover officer, including images and videos showing the sexual abuse of toddlers. This conduct—the distribution of child pornography—carries a 5-year mandatory minimum sentence, reflecting the severity of this offense.

Even more, the defendant repeatedly discussed setting up a live FaceTime meeting with the undercover so that he could watch the actual abuse of the undercover's (fictional) 8-year-old

daughter.  His actions went well "beyond the passive viewing of child pornography."  *See United States v. Livesay*, 2021 WL 325978, at *4 (D.D.C. January 29, 2021) (RMM) (finding the nature and circumstances weigh heavily in favor of detention when, among other things, the defendant solicited nude pictures of an undercover officer's purported minor child). The defendant described in graphic detail the abuse he hoped to see from what he believed was a dad sexually abusing his young daughter.  He even offered to pay to see it.[5]

Nor was this an isolated incident.  Evidence from the Kik Messenger service shows that these chats with the undercover were one small part of the defendant's larger distribution of child sexual abuse material.  The defendant sent thousands of messages in his quest to obtain and distribute child pornography on the app.  In those messages, he repeatedly expressed his desire to engage in his own hands-on abuse of infants and children.  And he has gone as far as to at least fantasize to others about killing children.

The nature and circumstances of the offense here weigh heavily in favor of detention.

## B.     The Weight of the Evidence Against the Defendant

The evidence against the defendant is strong.  The defendant's chats with the undercover were preserved, as were other messages the defendant sent on Kik to other individuals.  The defendant sent the undercover photos, his phone number, and his address—all of which law enforcement has confirmed link back to the defendant.  The defendant admitted in a post-*Miranda* interview that he had sent the communications with the undercover and that he had sent and

---

[5] The defendant also discussed with the undercover that he "spent all night talking to 2 different mothers trying to convince me to pay" to have sex with their kids, but he believed that they were "both scamming me."  This concerning set of messages suggests that the defendant is actively soliciting to pay for sex with minors through the messaging app.

received child sexual abuse material on Kik and WhatsApp.[6]  In sum, the weight of the evidence against the defendant is overwhelming.

### C.      The History and Characteristics of the Defendant

The defendant has a prior 2005 conviction from Louisville, Kentucky, for indecent exposure.  The specific facts and circumstances are not known to the government at this time. What is known is that the defendant struggled to comply with probation in that case.  He had two probation violations, ultimately resulting in a custodial sentence of 180 days.  Although a significant period has passed since that conviction, the electronic evidence here—some of which is only beginning to be analyzed—shows that the defendant was regularly engaging in the receipt and distribution of child sexual abuse material.

Moreover, the defendant's lack of a stable living situation presents a serious concern.  The defendant was living in Scottsburg, Indiana, at the time of his arrest with his brother, sister-in-law,[7] and nephew.  The government understands that the defendant is not welcome back at his brother's address.  Furthermore, he has no known connections to the D.C. area and no known place to stay in the D.C. area.  The defendant has limited financial resources, making travel back and forth between Indiana and D.C. difficult.  And the defendant's lack of a stable living situation would make it difficult to find a third-party custodian that could adequately monitor the conditions necessary to prevent him from accessing the internet, leaving the house, or not having contact with

---

[6] The government is in the process of extracting and reviewing the defendant's electronic devices, which law enforcement seized on January 31, 2024. Within these devices, the government fully expects to discover additional evidence of the defendant's criminal behavior.

[7] The defendant's sister-in-law is disabled and wheelchair bound. During his communications with the undercover law enforcement officer in this case, the defendant expressed his desire to "rape" his sister-in-law despite her disabled status.

children.

Additionally, at the time law enforcement executed the search warrant on the residence, beer cans littered his room, suggesting alcohol may be an issue:



Combined with the graphic and disturbing chat messages about the sexual abuse, torture, and murder of infants and children, the history and characteristics of the defendant here weigh in favor of detention.

### D.  The Nature and Seriousness of the Danger to Any Person or the Community

Finally, the evidence here establishes that the defendant presents a danger to the community. The defendant received and distributed child sexual abuse material, while also graphically describing his desire to abuse kids himself. The defendant provided his phone number and had FaceTime calls with the undercover in the hopes he would see the real-time abuse and exploitation of someone he believed to be an 8-year-old girl. This behavior shows that the defendant's sexual interest in children is not confined to the virtual world but poses a real and

articulable danger to living children.  Moreover, the defendant's own graphic descriptions of how he wants to hurt infants and children show his dangerousness.  He discussed kidnapping and raping a little girl.  He indicated his desire to commit the violent sexual abuse of infants.  The defendant should be taken at his word: "Oh my god I want to hurt a child for real so bad lol."

There is no reason to believe that home confinement would mitigate the danger posed by the defendant to the community.  *See United States v. Blanchard*, 2018 WL 4964505, at *5 (D.D.C. October 15, 2018) (BAH) (finding release conditions insufficient for a defendant distributing child pornography on Kik because of the "plethora of ways to obtain online access" and the difficulty in monitoring online access). Indeed, the defendant was living in a house smaller than 700 square feet with four adults living there when he committed this offense. Yet he was still able to surreptitiously engage in this conduct.  Home confinement will not prevent him from continuing this behavior.  Even a well-intentioned third-party custodian would struggle to monitor the defendant for 24 hours a day, given how easy it is to access the internet, the ubiquity of devices capable of doing so, and the defendant's knowledge about how to find online groups focused on child sexual abuse.   Thus, this factor weighs strongly in favor of detention.

## **CONCLUSION**

For all these reasons, no conditions or combination of conditions will ensure the safety of

the community.  The defendant should be detained pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


By:    */s/ Ryan Lipes*
Rachel Forman
Assistant United States Attorney
VA Bar No. 89169
Ryan Lipes
Special Assistant United States Attorney
N.Y. Bar No. 5404843
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-0844
Ryan.lipes2@usdoj.gov